UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No.  5:18-cv-288

| | | |
|---|---|---|
| ALICE THOMASON. ROBERTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT AND |
| | ) | JURY TRIAL DEMAND |
| FRANK PERRY individually, ERIK HOOKS | ) | |
| individually and in his official capacity as | ) | |
| Secretary of the North Carolina Department of | ) | |
| Public Safety, W. DAVID GUICE individually, | ) | |
| REUBEN YOUNG individually and in his | ) | |
| official capacity as Chief Deputy Secretary of | ) | |
| the Division of Adult Correction of the North | ) | |
| Carolina Department of Public Safety, ANNE | ) | |
| PRECYTHE individually, TRACY LEE | ) | |
| individually and in his official capacity as | ) | |
| Director of the Community Corrections Division | ) | |
| of the North Carolina Department of Public | ) | |
| Safety, KIM WILLIAMS individually and in her | ) | |
| official capacity as Division One Judicial | ) | |
| Division Administrator of the Community | ) | |
| Corrections Division of the North Carolina | ) | |
| Department of Public Safety, RODNEY | ) | |
| ROBERTSON individually and in his official | ) | |
| capacity as District Nine Judicial District | ) | |
| Manager of Judicial Division Two of the | ) | |
| Community Corrections Division of the North | ) | |
| Carolina Department of Public Safety, | ) | |
| WILLIAM MITCHELL individually and in his | ) | |
| official capacity as District Six Judicial District | ) | |
| Manager of Judicial Division One of the | ) | |
| Community Corrections Division of the North | ) | |
| Carolina Department of Public Safety, MAUD | ) | |
| EDWIN ELLIOTT INGRAM individually and | ) | |
| in his official capacity as a Community | ) | |
| Corrections Officers of the North Carolina | ) | |
| Department of Public Safety, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Alice Thomason Roberts, by and through her undersigned counsel, complains of defendants FRANK PERRY, ERIK HOOKS, W. DAVID GUICE, REUBEN YOUNG, ANNE PRECYTHE, TRACY LEE, KIM WILLIAMS, RODNEY ROBERTSON, WILLIAM MITCHELL, AND MAUD EDWIN ELLIOTT INGRAM, and states:

## STATEMENT OF THE CASE

This case involves the husband of a North Carolina state senator abusing his position of power as a Community Corrections Officer (Probation Officer) with the North Carolina Department of Public Safety ("DPS") by raping and blackmailing women that he supervised, including plaintiff Alice Roberts. Alice was on probation in Virginia with a 115 year sentence hanging over her head when her mother died in the spring of 2015. She moved to North Carolina to be closer to family, and transferred her probation here. Unfortunately for Alice, her probation supervision was assigned to Maud Ingram, the Chief Community Corrections Officer in Halifax, North Carolina. Ingram took advantage of a special relationship and position of power over Alice and raped her seven times in less than four months. He raped her at her home, at the Halifax County probation office, and at secluded public parks near Lake Gaston, North Carolina.

In between the assaults, Officer Ingram threatened and harassed Alice via phone and text message, saying he would violate her probation and send her to jail if she refused to comply with his demands. Ingram sent Alice disgusting and vulgar messages, demanding that she "send [] a picture of that pussy..and you with no clothes on" for him to use as "collater[al]" against her, and demanding that she agree to "TCB" once a week. He later explained that TCB meant "puttin this head in once a week...you know."

Ingram never should have been in a position to supervise Alice. There were multiple red flags and warning signs that were ignored by individuals within DPS. In fact, during the time Ingram was Alice's Probation Officer, he was under disciplinary review. His cases and case reviews were supposed to be

randomly checked every week. Additionally, Ingram was to notify a supervisor anytime he left the office on official business. If Ingram had been properly supervised and had there been appropriate policies in place, these horrific events would not have happened. Additionally, Alice was not the only female probationer that Ingram assaulted and intimidated. In 2012, Ingram raped and blackmailed another female whose probation he supervised in Hertford County. To Alice's knowledge, he was not disciplined for this misconduct at the time. Instead, DPS transferred Ingram to Halifax County and promoted him to Chief Community Corrections Officer at the Halifax Office.

It wasn't until Alice bravely came forward that law enforcement got involved, and Ingram was stopped. On September 17, 2015, the North Carolina State Bureau of Investigation (SBI) set up a sting at Alice's home, where Ingram was arrested and charged with multiple counts of rape and extortion. He was later charged with similar crimes against the victim in Hertford County. Ultimately, Ingram pled guilty to four counts of second-degree rape in May of 2017. Unfortunately for Alice, his conviction marked the end of only part of her unimaginable nightmare. Alice Roberts continues to live every day with the physical and mental scars left by Ingram.

Additionally, the actions of Ingram and others, as further described below, have had a chilling effect on the state's goals with respect to probation and rehabilitation of offenders in North Carolina. The impact of the failure to properly supervise Community Corrections Officers like Ingram, and the lack of appropriate policies to protect probationers and the public is far-reaching.

In this lawsuit, Alice is seeking to recover from Ingram and the other defendants compensatory damages, pain and suffering and other non compensatory damages, punitive damages, treble damages, costs, and attorneys' fees to the extent allowable under the law.

**THE PARTIES**

1.      Plaintiff Alice T. Roberts ("Alice") is a citizen and resident of Emporia, Virginia, an independent city within the Commonwealth of Virginia.

2.     From approximately June 5 through September, 17, 2015, Alice was on probation in North Carolina and being supervised by defendant Maud Ingram ("Officer Ingram"). During this time, Officer Ingram raped Alice on seven separate occasions. Additionally, he harassed, intimidated, and threatened her in an effort to prevent her from reporting the assaults.

3.     Defendant Frank Perry ("Secretary Perry") is a citizen of North Carolina, and at all relevant times worked and resided in and around Wake County, and was employed by the North Carolina Department of Public Safety ("DPS") as the Secretary of Public Safety. Secretary Perry is sued in his individual capacity as Secretary of DPS during the relevant time period in 2015. At the time Alice was a probationer in North Carolina and under the direct supervision of Officer Ingram, Secretary Perry was at all relevant times the Secretary of DPS and its agent and was charged with developing, enacting, implementing, and/or enforcing the policies and procedures for DPS, including those governing the supervision of Officer Ingram and/or reviewing his supervision of Alice, pursuant to N.C. Gen. Stat. § 143B-602. Secretary Perry is vicariously liable for the actions of his agents, employees, officers, managers and supervisors working for DPS during the time he served as its Secretary.

4.     Defendant Erik Hooks ("Secretary Hooks") is a citizen and resident of North Carolina, and is employed by DPS as the current Secretary of Public Safety for DPS. Secretary Hooks is sued in his individual capacity and in his official capacity as an officer of the State of North Carolina and DPS. Secretary Hooks is charged with developing, enacting, implementing, and/or enforcing the policies and procedures for DPS, pursuant to N.C. Gen. Stat. § 143B-602.

5.     Defendant W. David Guice ("Deputy Secretary Guice") is a citizen of North Carolina, and at all relevant times was employed by DPS as Chief Deputy Secretary of the Division of Adult Correction. Deputy Secretary Guice is sued in his individual capacity. At the time Alice was a probationer in North Carolina and under the direct supervision of Officer Ingram, Deputy Secretary Guice was at all relevant times an employee and agent of the Secretary of DPS and was charged with directing Officer

4

Ingram and/or reviewing his qualifications for the supervision of Alice, pursuant to N.C. Gen. Stat. §§ 143B-702 and 148.54.

6.　　　Defendant Reuben Young ("Deputy Secretary Young") is a citizen and resident of North Carolina, and is employed by DPS as the current Chief Deputy Secretary of the Division of Adult Correction for DPS. Deputy Secretary Young is sued in his individual capacity and in his official capacity as an officer of the State of North Carolina and DPS. As the Chief Deputy Secretary and agent of the Secretary of Public Safety, Deputy Secretary Young is charged with directing Community Corrections Officers and/or reviewing their qualifications for the supervision of probationers/parolees, pursuant to N.C. Gen. Stat. §§ 143B-702 and 148.54.

7.　　　Defendant Anne Precythe ("Director Precythe") is currently a citizen and resident of the state of Missouri. At all relevant times, Director Precythe was employed by DPS as Director of the Community Corrections Division. Director Precythe is sued in her individual capacity. At the time Alice was a probationer in North Carolina and under the direct supervision of Officer Ingram, Director Precythe was at all relevant times an employee and agent of the Secretary of DPS and was charged with issuing the offender supervision guidelines that Officer Ingram used and/or relied upon for his supervision of Alice, pursuant to DPS policy and as provided for under N.C. Gen. Stat. § 143B-702.

8.　　　Defendant Tracy Lee ("Director Lee") is a citizen and resident of North Carolina, and is employed by DPS as the current Director of the Community Corrections Division. Director Lee is sued in his individual capacity and in his official capacity as an officer of the State of North Carolina and DPS. As Director of the Community Corrections Division of DPS and an agent of the Secretary of Public Safety, Director Lee is charged with issuing the offender supervision guidelines that Community Corrections Officers use and/or rely upon for supervision of probationers/parolees, pursuant to DPS policy and as provided for under N.C. Gen. Stat. § 143B-702.

5

9. Defendant Kim Williams ("defendant Williams") is a citizen of North Carolina, and at all relevant times was employed by DPS as Division One Judicial Division Administrator. Defendant Williams is sued in her individual capacity and in her official capacity as Division One Judicial Division Administrator of the Community Corrections Division of DPS. Defendant Williams was assigned to Halifax County, District Six at the time Alice was a probationer in North Carolina and under the direct supervision of Officer Ingram. At all relevant times, defendant Williams was an employee and agent of the Secretary of DPS and was charged with supervising Officer Ingram and/or reviewing his supervision of Alice, pursuant to DPS policy.

10. Defendant Rodney Robertson ("defendant Robertson") is a citizen of North Carolina, and is employed by DPS as District Nine Judicial District Manager. Defendant Robertson is sued in his individual capacity and in his official capacity as District Nine Judicial District Manager of Judicial Division Two of the Community Corrections Division of DPS. Defendant Robertson was a supervisor of Community Corrections Officers for the Community Corrections Division of DPS during the relevant time period in 2015. Defendant Robertson was assigned as a supervisor of Officer Ingram at the time Alice was a probationer in North Carolina and under the direct supervision of Officer Ingram. At all relevant times, defendant Robertson was an employee and agent of the Secretary of DPS and was charged with supervising Officer Ingram and/or reviewing his supervision of Alice, pursuant to DPS policy.

11. Defendant William Mitchell ("defendant Mitchell") is a citizen of North Carolina, and at all relevant times was employed by DPS as District Six Judicial District Manager. Defendant Mitchell is sued in his individual capacity and in his official capacity as District Six Judicial District Manager of Judicial Division One of the Community Corrections Division of DPS. Defendant Mitchell was assigned to Halifax County, District Six, at the time Alice was a probationer in North Carolina and under the direct supervision of Officer Ingram. At all relevant times, defendant Mitchell was an employee and agent of the

6

Secretary of DPS and was charged with supervising Officer Ingram and/or reviewing his supervision of Alice, pursuant to DPS policy.

12.     Defendant Maud Edwin Elliott Ingram ("Officer Ingram") is a citizen of North Carolina, currently residing as an inmate in Maury Correctional Institute located in Greene County, North Carolina. Officer Ingram is sued in his individual capacity and in his official capacity as Chief Community Corrections Officer for Halifax County, North Carolina. At all relevant times herein, Officer Ingram was acting under the color of his authority and within the course and scope of his employment as an agent of the Secretary of DPS and a Community Corrections Officer with supervisory authority over Alice while she was on probation in North Carolina.

## WAIVER OF IMMUNITY

13.     The allegations in the above paragraphs are incorporated by reference.

14.     At all relevant times, defendants waived any and all immunity through their acts or omissions as outlined in this Complaint.

15.     At all relevant times, a special relationship existed between Plaintiff and all defendants such that a duty to protect Plaintiff from Officer Ingram was expected.

16.     At all relevant times, defendants were acting individually and/or as public officials on behalf of the North Carolina Department of Public Safety. A public official may be held personally liable for negligence when his act, or failure to act, was corrupt or malicious. *See Lambert v. Cartwright*, 584 S.E.2d 341, 344 (N.C. App. 2003). Furthermore, a governmental entity may be held liable when its policy or custom, as adopted by its agents, are a moving force of a deprivation of rights. *See Monell v. Department. of Social Services of City of New York*, 436 U.S. 658, 694-95 (1978).

17.     Upon information and belief, to the extent that any of the defendants in this action claim they are a municipality, or a government, or county owned or operated, or funded entity or an employee

or agent of any such entity, all such defendants waived governmental immunity and/or sovereign immunity for any of the acts or omissions described in this complaint.

18.     In the alternative, sovereign immunity must give way to violations of the North Carolina Constitution when no adequate state remedy is available and state causes of action barred by sovereign immunity are not adequate state remedies.

19.     In the alternative, upon information and belief, at all relevant times, DPS had in effect an insurance policy with an unknown liability insurance company which provided liability coverage to defendants. Further, this policy affords coverage to defendants for punitive and compensatory damages.

## JURISDICTION AND VENUE

20.      The allegations in the above paragraphs are incorporated by reference.

21.     Plaintiff brings this action and seeks compensatory damages, pain and suffering, non compensatory damages, punitive damages, and other relief arising under 42 U.S.C. §§ 1983, and 1988, the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and other statutory and common law for intentional torts, negligence, and the deprivation under color of law of her rights and the unlawful, unconstitutional, willful, and wanton conduct of Defendants that caused her injuries.

22.     This Court has jurisdiction of Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

23.     This Court also has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332 due to the fact that there is complete diversity between the parties and the amount in controversy is greater than $75,000.00.

24.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because the defendants reside here and because a substantial part of the events and omissions giving rise to this claim occurred here.

8

## FACTUAL ALLEGATIONS

25.     The allegations contained in the above paragraphs are incorporated herein by reference.

26.     Alice Roberts is a 48 year old woman from the Commonwealth of Virginia. She was born in Richmond, Virginia and grew up near Emporia, Virginia. Alice has a biological brother, a half sister and a half brother from her mother's first marriage, and a half brother from her father's first marriage.

27.     Alice has two biological children, Amanda Roberts and Jordon Lynch. Additionally, Alice was a stepmother to Crystal Wallace during her four year marriage to Daryl Roberts.

28.     Alice began struggling with substance abuse around 1994. It wasn't until she entered a rehab facility in Georgia in 2000 and was diagnosed as bipolar, that she realized she had been self-medicating through drugs. Alice completed the treatment program in Georgia and maintained her sobriety until the time she committed the offenses in 2003 that placed her on indefinite probation. As further described below, Officer Ingram used Alice's struggles with sobriety to manipulate, intimidate, and exploit her vulnerabilities for his own personal agenda.

29.     On May 27, 2004, Alice was convicted of Grand Larceny, Statutory Burglary, and Common Law Burglary in Brunswick, Virginia. She was sentenced to a total of 120 years; 115 years and 5 months of the sentence was suspended (CR03000104-14).   Alice served 4 years 2 months in the Virginia Department of Corrections.

30.     Upon her release on March 18, 2008, Alice was placed on indefinite probation in Virginia.

31.     Alice lived with her mother in Tanglewood, Virginia, when her mother was diagnosed with lung cancer in November of 2014. She continued to live with and care for her until her mother's death in January, 2015.

32.     After her mother died, Alice relocated to North Carolina to live with family.

33.     In May of 2015, Alice moved to Roanoke Rapids in Halifax County, North Carolina, where she planned to live with her daughter, Amanda.

34. The Commonwealth of Virginia transferred Alice's probation to North Carolina, pursuant to the Interstate Compact Act. In the process of making arrangements to move, Alice visited her former stepdaughter Crystal Wallace in North Carolina. Crystal was on probation in Halifax County and was being supervised by Officer Ingram. During that visit, Alice met Officer Ingram for the first time. Approximately two weeks later, Officer Ingram assigned himself to the supervision of Alice's probation in Halifax County.

35. Defendant Ingram is the husband of Erica Smith-Ingram, a two-term North Carolina State Senator representing District 3. Senator Smith-Ingram serves the Counties of Bertie, Chowan, Edgecombe, Hertford, Martin, Northampton, Tyrrell, and Washington.

36. Officer Ingram began working for DPS in April 2010. On June 30, 2012, he was hired as a Community Corrections Officer in Hertford County and approximately two years later, he was promoted to the Chief Community Corrections Officer in Halifax County. Officer Ingram ran the office in Halifax County and supervised other DPS employees.

37. Officer Ingram used his position as Chief Community Corrections Officer to harass, intimidate, threaten, abuse, and physically and sexually assault Alice on seven separate occasions from June 5, 2015 until September, 17, 2015, when he was ultimately arrested.

38. In June of 2015, Officer Ingram began raping Alice during his twice-monthly supervisory visits. On multiple occasions, Officer Ingram insisted that Alice meet him at his office after normal business hours, against policy, in an effort to get Alice alone.

39. On multiple occasions, Officer Ingram, by force or threat of force, took explicit photographs of Alice, which he used to intimidate her and prevent her from reporting his misconduct. Officer Ingram demanded that Alice wear a dress for each supervisory visit and forced her to remove her underwear so that he could take pictures up her skirt.

10

40.     These rapes are described in further detail as follows:

a.      On June 5, 2015, in the mid-afternoon, Officer Ingram raped Alice at her residence, 23 Windsor Forest Drive, Roanoke Rapids, Halifax County, North Carolina, 27870. Officer Ingram took explicit photographs of Alice that day.

b.      On June 19, 2015, after 6:00 P.M., Officer Ingram raped Alice in an office at the Halifax County Adult Probation and Parole Office, located at 4425 U.S. Hwy 301 S, Halifax, Halifax County, North Carolina, 27839. He insisted that she report after 6:00 P.M., and he took her into an office with a window facing the driveway leading to the entrance to the building. It was in this office that Officer Ingram raped Alice while he was facing the window so that he could see if anyone was approaching the building.

c.      In early July 2015, at a time in the late evening, Officer Ingram instructed Alice to meet him at a public picnic area at or near the Lake Gaston Dam, in Littleton, North Carolina. There, in the bed of his pickup truck, Officer Ingram raped Alice.

d.      In mid-July 2015, at a time after 6:00 P.M., Officer Ingram again raped Alice in the exterior-facing office at the Halifax County Probation Office. He insisted that she meet him after 6:00 P.M. Alice does not recall any other probation officers in the building.

e.      During the first week of August 2015, Alice moved to 96 Mills Street, Roanoke Rapids, Halifax County, North Carolina, 27870.

f.      In early August 2015, in the mid-afternoon, Officer Ingram raped Alice at her new home.

g.      In mid August 2015, in the mid-afternoon, Officer Ingram again raped Alice at her home on Mills Street.

h.      On the occasions where Officer Ingram raped Alice at her home, Officer Ingram would insist that Alice arrange for the two of them to be alone.

11

i.  In early September 2015, after 6:00 P.M., Officer Ingram insisted that Alice meet him at a community center at Lake Gaston, located at or around 564 NC-46, Gaston, Northampton County, North Carolina, 27832. Officer Ingram raped Alice on a couch and on a pool table inside the community center. This was the last time Officer Ingram raped her.

41.  Each and every time Officer Ingram raped Alice, he would begin the encounter while wearing his state-issued firearm on his belt. Officer Ingram would remove his duty belt and position his firearm in such a way that it was visible to Alice and accessible to him.

42.  At no time did Alice willingly consent to the sexual contact or the sexual advances of Officer Ingram.

43.  Upon information and belief, Officer Ingram was subject to disciplinary action and was under a poor performance review plan during the time he supervised Alice's probation. The plan required some of Officer Ingram's cases to be reviewed weekly by a supervisor. Upon information and belief, Officer Ingram was also required to notify a supervisor when he conducted an out-of-office meeting with a probationer. If DPS supervisor(s) had, in fact, been reviewing Officer Ingram's cases, some or all of these horrific events would not have occurred.

44.  Officer Ingram also harassed and intimidated Alice via phone and text message.

45.  If Officer Ingram's cases were, in fact, being reviewed as required by the poor performance plan, the threats made via text message would have been discovered.

46.  Officer Ingram disregarded evidence of illegal drug possession and use by Alice, failed to turn in her failed urinalysis tests, and paid her supervision fees in an effort to intimidate her and prevent her from reporting the assaults.

47.  If Officer Ingram's cases were, in fact, being reviewed as required by the poor performance plan, his misconduct in failing to keep adequate records would have been discovered.

12

48.     Officer Ingram placed Alice in constant fear of bodily harm and in a constant state of mental anguish. Defendant Ingram abused his position of authority by displaying his firearm during the assaults, and threatening to use his power as a probation officer to arrest Alice and cause her suspended sentence to be activated if she refused to comply with his requests or reported the assaults.

49.     Following the early September 2015 rape at Lake Gaston, Alice decided she had enough. She contacted Geoffrey Davis, an attorney at the Chichester Law Firm in Roanoke Rapids, Halifax County, North Carolina, and described how Officer Ingram had raped her and abused his power by threatening to file a violation report.

50.     After this correspondence, someone from the Chichester Law Firm contacted Captain Bobby Martin of the Roanoke Rapids Police Department and shortly after that contact, Roanoke Rapids Chief of Police Chuck Hasty contacted the SBI.

51.     The SBI began monitoring Alice's text messages to see if Ingram would attempt the same behavior again. They developed a plan to try and get Ingram to schedule his next in-person meeting with Alice for Thursday September 17, 2015.

52.     During this time, the following text exchanges were documented:

On September 14, 2014:

Ingram: Carl will be around...you say you don't but the very next day...he's there

Alice: He's not going to be there Thursday because he's got to be there for his daughter and that is way out of down want be back until Friday. Look I jus don't want to be revoked I'm scared

Ingram: Yeah but I don't want no one rolling up...at your resident...were is ms. phllyis..her boys..see I'm been trying to share this information with you...you have a lot of yrs to pull…

...

Ingram: Well send me a picture of that pussy..and you with no clothes on..for..this agreement..you mite break it again

**Alice:** I can't the camera don't work on my phone its a used phone

**Ingram:** Well I need something….used mines

...

**Alice:** Why can't u look at the PUC on ur phone

**Alice:** I mean pics

**Ingram:** Don't have it...delete it while back because couldn't see it...well if you don't just don't worry about it...bad agreement

**Alice:** I don't have no camera I'm at home and Carl is sleep in the bedroom I got delete the message and the camera don't work for the ump tin time

**Alice:** Look please u get pics Thursday ok

**Ingram:** Ok delete all

…

**Alice:** Ok talk to u soon will delete all messages

**Ingram:** Delete all

END OF TEXT EXCHANGE ON SEPTEMBER 15, 2015

On September 16, 2015:

**Alice:** Ok that good we are still just help me and I all help u

**Ingram:** OK heres the deal if we going to agree...I need collater….for insurance...you must do your part..no excuses

**Alice:** Ok I will no problem but i won't have my money until until the 1st and I'll have 120 for nc and start back paying va 40 a month thats the agreement I have with va

…

**Alice:** What kind of collater

**Ingram:** You will be paying...40.00 supervision fees in n.c. and court indebtness in va. you know what kind of collater

...

**Ingram:** Now...I want to atleast get up once a week for tcb...you have to make it happen….do your part no excuses...all i ask is you cooperate….and i will do my part….I will let you know when your appts.is and when to come in and not too….u

**Alice:** What is tcb I can do that I will have my van back at the began of the month so I won't have a problem getting around and making sure roommate are gone.

…

**Ingram:** If you want me to make sure that you are doing what expected of your probation...then you have to comply with tcb once a week

**Alice:** That's what I asking what is tcb

**Alice:** Do you mean to come by 1 a week

**Ingram:** You need to delete all messages as of now...doing what we were supposed to do in the agreement

**Alice:** Yes I do delete all

**Ingram:** Make sure

…

**Ingram:** See if you could get out and meet on you own..then you could have40..or maybe more in your pocket...but you can't...no i mean puttin this head in once a week...you know

**Alice:** Yea I know that's why I cleared for Thursday no way to day

**Ingram:** Well first things first...then when you can come out...we will talk about money.

END OF TEXT EXCHANGE ON SEPTEMBER 16, 2015.

15

53.     On Thursday, September 17, 2015, the SBI set up surveillance in a back bedroom at Alice's home in Roanoke Rapids.

54.     Alice wore a wire, and met Officer Ingram in another room of the home when he arrived. The two had the following exchange that was captured on the wire and transcribed:

**Ingram:** Okay, sit down.

**Alice:** Sit down?

**Ingram:** Unt Unh, you can sit in this chair if you want to.

**Alice:** You want to take a picture of me?

**Ingram:** Yea, I want...yeah

…

**Ingram:** Take them clothes off. So I want to make sure I have...so you won't bullshit me.

**Alice:** I'm not bullshitting. What I'm saying is can't we do this…

**Ingram:** Come on now. This say so I won't have no problems because you be saying reneging and stuff.

**Alice:** Reneging?

**Ingram:** Yeah.

**Alice:** Take a picture?

**Ingram:** Yeah.

**Alice:** How about you take it while I'm standing over here?

**Ingram:** I want you to sit down for I can see that pussy.

**Ingram:** Come on Ms. Alice for somebody pull up.

**Alice:** Aint nobody going to be pulling up.

**Ingram:** Come on here, pull your dress up. Come on I can't see…

**Alice:** They are.

**Ingram:** Who?

**Alice:** They are.

**Ingram:** What do you mean they are?

**Alice:** They are open.

**Ingram:** Oh, I can't see that pussy like that come on here.

**SBI AGENT:** SBI Agent you're being recorded, don't touch your gun. Turn around. Turn around. Turn around.

55.     It was at this moment that the SBI agents burst into the room to arrest Officer Ingram.

56.     Officer Ingram was arrested on September 17, 2015, and charged with rape, attempted rape, extortion, and failure to discharge his duties as a Community Corrections Officer. He was released on bond.

57.     Despite knowing of the allegations and evidence against Officer Ingram, DPS waited until October of 2015, to reassign him to administrative duties.

58.     It wasn't until six or seven weeks later, in late November 2015, that Officer Ingram was finally terminated as a Community Corrections Officer. Upon information and belief, Ingram began receiving a pension of $1,100 per month.

59.     In late July 2016, a grand jury in Halifax County indicted Officer Ingram for seven counts of first degree rape, one count of attempted first degree rape, eight counts of extortion, and one count of misdemeanor willfully failing to discharge his duties as a Community Corrections Officer.

60.     Some time leading up to Officer Ingram's conviction in 2017, he attempted to bribe Alice with tens of thousands of dollars in cash to recant her allegations and stop cooperating with the District Attorney handling the case. He manipulated Crystal, Alice's former step-daughter whose probation Ingram was also supervising, to communicate the bribe to Alice.

61.     Alice refused and reported the incident to law enforcement. The SBI asked that Alice wear an ankle monitor, which she believed was for the purpose of law enforcement knowing her whereabouts if they suspected that she was in any danger.

62.     In 2016, a grand jury in Warren County indicted Officer Ingram for one count of Common Law Obstruction. Upon information and belief, this charge was related to Officer Ingram's attempted bribe.

63.     Also in 2016, a grand jury in Hertford County indicted Officer Ingram for two counts of first degree rape, one count of second degree rape, three counts of extortion, and one count of misdemeanor willful failure to discharge his duties as a Community Corrections Officer. (16CRS577). These charges were related to a second rape victim, Sonya Callis Taylor (formerly Sonya Callis White).

64.     Officer Ingram supervised Ms. Taylor in Hertford County, prior to his being promoted and transferred to Halifax County. According to court documents, Officer Ingram raped Ms. Taylor sometime between April 20, 2012 and September 25, 2012. Like he did to Alice, Officer Ingram also threatened to report probation violations committed by Sonya.

65.     On May 1, 2017, Officer Ingram accepted a consolidated plea agreement and pled guilty to four counts of second-degree rape in Halifax County. He was sentenced to three consecutive prison terms of 73 months to 148 months each. Pursuant to the current sentencing guidelines and applicable North Carolina law, Officer Ingram will spend a minimum of 18 years and 3 months in the custody of the North Carolina Department of Adult Corrections.

66.     From the time Officer Ingram was arrested until he was ultimately convicted, Alice lived in constant fear for her life and personal safety.

67.     In addition to committing many crimes, Officer Ingram's acts violated Alice's protected rights and were an excessive intrusion onto her person without just cause and amount to deliberate indifference to Alice's protected rights.

68.     Officer Ingram, by force and intimidation, raped Alice and took advantage of a position of trust. He threatened to take Alice into custody and cause the suspended sentence to be activated if she refused to comply with his requests.

69.     At all relevant times, Officer Ingram was employed by DPS as an agent and employee of the Secretary of Public Safety, and was acting within the course and scope of his employment.

70.     At all times relevant herein, Officer Ingram was being supervised by the other defendants.

## COUNT I

**Violations of Federal Civil Rights and the Rights of Due Process, Privacy, Freedom from Unreasonable Search and Seizure, and Freedom from Cruel and Unusual Punishment, Afforded by the United States Constitution by Officer Ingram in his individual and official capacity 42 U.S.C. §§ 1983 and 1988**
**First, Fourth, Fifth, Eighth, and Fourteenth Amendments**

71.     The allegations contained in the above paragraphs are incorporated herein by reference.

72.     As described above, Officer Ingram acted individually under the color of state law and within the scope of his employment, customs, practices, usage, or policy at all relevant times as Chief Community Corrections Officer and had certain duties imposed upon him with regard to Alice.

73.     Officer Ingram violated Alice's rights under the United States Constitution, including rights secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, and/or federal law by intentionally, willfully, maliciously, and with conscious and deliberate indifference, harassed, intimidated, threatened, abused, and sexually assaulted Alice.

74.     Probation officers owe duties to the individuals they supervise while on probation, pursuant to North Carolina and federal law, including but not limited to the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Any and all reasonable probation officers in the position of Officer Ingram knew and should have known what these duties are.

75.     Officer Ingram was negligent, grossly negligent, reckless, and/or willful and wanton in the way he violated those duties he owed to Alice in one or more of the following ways:

19

a.     He harassed, intimidated, abused, and raped Alice;

b.     He took compromising photos of Alice and used those to blackmail her;

c.     He tried to bribe Alice;

d.     He threatened Alice;

e.     He used coercion to hide certain activities and pay money she owed the state of North Carolina and the Commonwealth of Virginia in an attempt to control Alice and avoid suspicion;

f.     He failed to follow the proper policies and procedures established by the Community Corrections Division of DPS;

g.     He violated the Prison Rape Elimination Act of 2003;

h.     He failed to avoid undue familiarity with Alice;

i.     He contributed to and forced Alice to violate the law;

j.     He failed to conduct himself in a professional manner;

k.     He failed to ensure compliance with a court's judgment;

l.     He failed to provide for and maintain the safety and security of his probationer, Alice;

m.     He failed to use all practicable and suitable methods consistent with the conditions imposed by the controlling authority to aid and encourage persons on probation to bring about improvement in their conduct and condition;

n.     He prevented Alice from rehabilitation and reintegration into society;

o.     He filed fabricated records pertaining to his supervision of Alice in order to attempt to conceal his criminal activity;

p.     He negligently violated the rights afforded to Alice by North Carolina law, the North Carolina Constitution, and the Constitution of the United States.

20

76. The right to be free from harassment, intimidation, threats, abuse, and assault is a clearly established constitutional right, pursuant to the Eighth and Fourteenth Amendments to the United States Constitution, and is a right which any probation officer in the position of Officer Ingram would have known. It is and was at all relevant times well known that a probation officer cannot engage in any sexual contact with a person under his supervision. As a result, the defense of qualified immunity is unavailable to, and has been waived by, Officer Ingram.

77. The misconduct described in this Complaint was undertaken pursuant to the policies and practices of the Community Corrections Division of DPS in Halifax County, North Carolina.

78. These failures resulted in a violation of North Carolina Law, and of Alice's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights under the Constitution of the United States.

79. As a direct result of the deprivation of Alice's constitutional and federal rights as alleged herein, Alice experienced unnecessary and excessive pain and suffering, bodily injury, loss of income, humiliation, severe emotional distress, and mental anguish.

80. Consequently, Alice is entitled to recover from Officer Ingram, in his individual and official capacity, compensatory damages, pain and suffering and other non compensatory damages, punitive damages, treble damages, costs, and attorneys' fees to the extent allowable under the law.

<u>**COUNT II**</u>

**North Carolina State Law Claim against Officer Ingram**
**Assault and Battery**

81. The allegations contained above are incorporated by reference.

82. As described above, Officer Ingram acted individually under the color of state law and within the scope of his employment, customs, practices, usage, or policy at all relevant times as Chief Community Corrections Officer and had certain duties imposed upon him with regard to Alice.

83.     Officer Ingram, by an intentional act by force and violence threatened Alice with imminent bodily injury and touched her against her will before, during, and following each of the above-described rape and sexual assault incidents. This caused her great physical pain and injury, and emotional harm.

84.     These threats and other intentional acts of Officer Ingram before, during, and following each attack harmed Alice and caused her to have a reasonable apprehension that harmful and offensive contact with her person was imminent.

85.     This harm continued all the way up to the minute that SBI agents burst through the door and arrested Officer Ingram on September 17, 2015.

86.     As a direct and proximate result of the extreme and outrageous intentional acts of Officer Ingram, Alice experienced unnecessary and excessive pain and suffering, humiliation, emotional distress, mental anguish, and other permanent and irreparable damages in an amount exceeding $75,000.00.

87.     Consequently, Alice is entitled to recover from Officer Ingram in his individual and official capacity, compensatory damages, pain and suffering and other non compensatory damages, punitive damages, and such other and further relief as is allowable under the law.

## COUNT III

### North Carolina State Law Claim against Officer Ingram
### Invasion of Privacy

88.     The allegations contained above paragraphs are incorporated by reference.

89.     At all times relevant, Alice had an expectation of privacy and a right to solitude, seclusion, private affairs, and personal concerns, especially her intimacy and sexual choices.

90.     In the manner described more fully above, Officer Ingram physically and mentally invaded the solitude, seclusion, private affairs and personal concerns of Alice by knowingly and intentionally harassing, intimidating, threatening, abusing, raping, and sexually assaulting her seven times; he was only stopped by SBI agents arresting him during his eighth attempt to rape Alice. Additionally, Officer Ingram forced Alice to pose for explicit photographs of her genital area.

91.     Officer Ingram's intentional actions were done knowingly, with purpose, and/or with reckless indifference to the consequences.

92.     Officer Ingram's intentional invasion and intrusion into the privacy of Alice was highly offensive to Alice and likewise would be highly offensive to any reasonable person under the same or similar circumstances.

93.     As a direct and proximate result of Officer Ingram's invasion of privacy, Alice suffered bodily injury, humiliation, severe emotional distress, and mental anguish in an amount exceeding $75,000.00.

94.     Consequently, Alice is entitled to recover from Officer Ingram, in his individual and official capacity, nominal and compensatory damages, pain and suffering and other non compensatory damages, punitive damages under North Carolina and federal law, and such other and further relief as is allowable under the law.

## COUNT IV

**North Carolina State Law Claim against Officer Ingram**
**Negligence, Gross Negligence, and Willful and Wanton Conduct**

95.     The allegations contained above are incorporated by reference.

96.     Officer Ingram owed certain duties to Alice, including but not limited to the duty of reasonable care.

97.     In the manner described more fully above, Officer Ingram breach his duty of care to Alice by knowingly harassing, intimidating, threatening, abusing, raping, and assaulting Alice on multiple occasions.

98.     The conduct of Officer Ingram was negligent, grossly negligent, willful, wanton, extreme and outrageous and exceeded all bounds usually tolerated by a decent society.

99.     This misconduct by Officer Ingram was undertaken in deliberate disregard of a high degree of probability that emotional distress would follow.

23

100.     As a direct and proximate result of the negligent conduct of Officer Ingram, Alice experienced pain and suffering, bodily injury, humiliation, loss of income, severe emotional distress, and mental anguish in an amount exceeding $75,000.00.

101.     Consequently, Alice is entitled to recover from Officer Ingram, in his individual and official capacity, compensatory damages, pain and suffering and other non compensatory damages, punitive damages, and such other and further relief as is allowable under the law.

## COUNT V

**North Carolina State Law Claim against Officer Ingram**
**Negligent and Intentional Infliction of Emotional Distress**

102.     The allegations contained above are incorporated by reference.

103.     Officer Ingram's conduct was extreme and outrageous and exceeded all bounds usually tolerated by a decent society.

104.     Officer Ingram's conduct placed Alice in the zone of danger.

105.     This misconduct by Officer Ingram was undertaken in deliberate disregard of a high degree of probability that emotional distress would follow.

106.     As a direct and proximate result of the negligent conduct of Officer Ingram, Alice experienced pain and suffering, bodily injury, humiliation, loss of income, severe emotional distress, and mental anguish in an amount exceeding $75,000.00.

107.     Consequently, Alice is entitled to recover from Officer Ingram, in his individual and official capacity, compensatory damages, pain and suffering and other non compensatory damages, punitive damages, and such other and further relief as is allowable under the law.

## COUNT VI

**Violations of Federal Civil Rights and the Rights of Due Process, Privacy, Freedom from Unreasonable Search and Seizure, and Freedom from Cruel and Unusual Punishment, Afforded by the United States Constitution by Defendants Perry, Hooks, Guice, Young, Precythe, Lee, Williams, Robertson, and Mitchell in their individual and official capacities**
**42 U.S.C. §§ 1983 and 1988**
**First, Fourth, Fifth, Eighth, and Fourteenth Amendments**

108. The allegations contained above are incorporated by reference.

109. As described above, defendants Secretary Perry and Secretary Hooks acted individually under the color of state law and within the scope of their employment, customs, practices, usage, or policy at all times herein as the Secretary of Public Safety and were charged with the organization, development, enactment, implementation and/or enforcement of Rules, Policies, and/or Regulations affecting Community Corrections Officers in North Carolina and had certain duties with regard to Alice.

110. As described above, defendants Guice, Young, Precythe, Lee, Williams, Robertson, and Mitchell (collectively "Supervisor Defendants") acted individually under the color of state law and within the scope of their employment, customs, practices, usage, or policy at all times herein as Officers, Supervisors, Directors, and/or otherwise as agents and employees of DPS and of the Secretary of Public Safety and were charged with the development, enactment, implementation and/or enforcement of Rules, Policies, and/or Regulations affecting Community Corrections Officers, and had certain duties imposed upon them with regard to Alice.

111. At all times relevant herein, Secretary Perry, Secretary Hooks, and the Supervisor Defendants were responsible for the hiring, retention, and supervision of Officer Ingram.

112. Secretary Perry, Secretary Hooks, and the Supervisor Defendants violated Alice's rights under the United States Constitution, including rights secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, and/or federal and state law by intentionally, willfully, maliciously, and with conscious and deliberate indifference, failing to take reasonable measures to protect Alice from harassment, intimidation, threats, abuse, sexual assault, and severe emotional harm when they knew or should have known that Officer Ingram was a risk to her safety; and by failing to adequately and reasonably supervise and/or investigate Officer Ingram when they knew or should have known that Ingram was unfit for the position of Community Corrections Officer.

25

113.     Secretary Perry, Secretary Hooks, and the Supervisor Defendants were negligent, grossly negligent, reckless, and/or willful and wanton in one or more of the following ways:

a.      They failed to follow the proper policies and procedures established by the Community Corrections Division of DPS;

b.      They violated the Prison Rape Elimination Act of 2003;

c.      They failed to develop, enact, implement, or enforce policies sufficient to properly supervise probation officers, to properly investigate claims of abuse and misconduct by probation officers, and to protect individuals on probation in North Carolina, including but not limited to Alice;

d.      They failed to properly supervise Officer Ingram;

e.      They failed to properly review Officer Ingram's supervision of Alice to ensure that he was following the proper policies and procedures established by the Community Corrections Division of DPS;

f.      They failed to ensure Officer Ingram was using all practicable and suitable methods consistent with the conditions imposed by the controlling authority to aid and encourage persons on probation to bring about improvement in their conduct and condition;

g.      They failed to comply with the policies and rules established by the North Carolina Criminal Justice Education and Training Standards Commission;

h.      They failed to properly train and/or provide appropriate training for Officer Ingram;

i.      They failed to protect Alice from Officer Ingram, who the defendants knew or should have known was a threat to her safety and well-being;

j.      They failed to provide for and maintain the safety and security of probationers;

k.      They failed to report suspicious activity by Officer Ingram related to his supervision of female probationers, including but not limited to Alice;

l.      They failed to properly investigate claims of misconduct and incompetence made against Officer Ingram;

114.    The misconduct by Secretary Perry, Secretary Hooks, and the Supervisor Defendants described in this Complaint was undertaken pursuant to the policies and practices of the Community Corrections Division of DPS in Halifax County, North Carolina.

115.    These failures resulted in a violation of Federal and North Carolina Law, and Alice's First, Fourth, Fifth, Eighth, and Fourteenth amendment rights under the Constitution of the United States.

116.    As a direct result of the deprivation of Alice's constitutional and federal rights as alleged herein, Alice experienced unnecessary and excessive pain and suffering, bodily injury, humiliation, severe emotional distress, and mental anguish.

117.    Consequently, Alice is entitled to recover from Secretary Perry, Secretary Hooks, and the Supervisor Defendants in their individual and official capacities, compensatory damages, pain and suffering and other non compensatory damages, punitive damages, treble damages, costs, and attorneys' fees.

## COUNT VI

**State Law Claim against Defendants Perry, Hooks, Guice, Young, Precythe, Lee, Williams, Robertson, and Mitchell**
**Negligent Hiring, Supervision, and Retention**

118.    The allegations contained in the above paragraphs are incorporated herein by reference.

119.    In the manner described more fully above, Secretary Perry, Secretary Hooks, and the Supervisor Defendants were negligent, grossly negligent, reckless, and/or willful and wanton in the hiring, retaining, and supervising of Officer Ingram and entrusting Alice into his care. Secretary Perry,

Secretary Hooks, and the Supervisor Defendants failed to adequately supervise Officer Ingram, and failed to develop, enact, implement, and/or enforce appropriate policies in order to protect Alice from Officer Ingram.

120.     Upon information and belief, Officer Ingram had a history of complaints filed against him by females on probation who were assigned to Officer Ingram's supervision.

121.     Upon information and belief, Officer Ingram was on a poor performance review plan that required his cases to be reviewed weekly.

122.     A reasonable investigation or reasonable supervision would have revealed a history of abuse, misconduct, and unfitness to serve as a probation officer.

123.     Secretary Perry, Secretary Hooks, and the Supervisor Defendants knew or should have known of Officer Ingram's misconduct and propensity to take advantage of and abuse female probationers.

124.     Officer Ingram was incompetent for the position of Community Corrections Officer and Chief Community Corrections Officer.

125.     Secretary Perry, Secretary Hooks, and the Supervisor Defendants either knew or, through the use of ordinary and reasonable care in the oversight and supervision of Officer Ingram, should have known of Officer Ingram's incompetency and unfitness.

126.     As a direct and proximate result of Officer Ingram's incompetency and unfitness, Alice sustained extensive damages.

127.     Accordingly, Secretary Perry, Secretary Hooks, and the Supervisor Defendants were negligent, grossly negligent, reckless, and/or willful and wanton in the hiring, retaining, and supervising of Officer Ingram.

128.     As a direct and proximate result of the acts and omissions of Secretary Perry, Secretary Hooks, and the Supervisor Defendants, Alice sustained extensive damages, as further described above.

129.     The aforementioned damages to Alice exceed $75,000.00.

130.     Consequently, Alice is entitled to recover from Secretary Perry, Secretary Hooks, and the Supervisor Defendants in their individual and official capacities, compensatory damages, pain and suffering and other non compensatory damages, punitive damages, and such other and further relief as is allowable under the law.

## COUNT VII

**State Constitutional Claim Pursuant to *Corum v. University of North Carolina Through Bd. of Governors*, 330 N.C. 761 (1992)**

131.     The allegations contained in the above paragraphs are incorporated herein by reference.

132.     In the event that there is no adequate state remedy available to Alice and her state causes of action are deemed by this Court to be barred by sovereign immunity, she may nonetheless proceed on violations of the North Carolina State Constitution as provided for in *Corum v. University of North Carolina Through Bd. of Governors*, 330 N.C. 761 (1992) (holding that sovereign immunity must give way to violations of the North Carolina Constitution when no adequate state remedy is available and state causes of action barred by sovereign immunity are not adequate state remedies).

133.     As a direct and proximate result of the acts and omissions amounting to violations of the North Carolina State Constitution by Secretary Perry, Secretary Hooks, and the Supervisor Defendants, Alice sustained extensive damages, as further described above.

134.     The aforementioned damages to Alice exceed $75,000.00.

135.     Consequently, Alice is entitled to recover from Secretary Perry, Secretary Hooks, and the Supervisor Defendants in their individual and official capacities, compensatory damages, pain and suffering and other non compensatory damages, punitive damages, and such other and further relief as is allowable under the law.

## DAMAGES

136.     The allegations contained in the above paragraphs are incorporated herein by reference.

137.    Alice was harassed, intimidated, threatened, abused, and physically and sexually assaulted. She suffered extensive injuries and, because of the negligence, gross negligence, willful and wanton conduct of and intentional acts by the defendants, Alice suffered unnecessary pain and suffering, loss of enjoyment of life, fear, and emotional distress, and continues to suffer these things which are permanent and irreparable.

138.    Alice is entitled to recover from all defendants, jointly and severally, all damages permitted under the law.

## PUNITIVE DAMAGES

139.    The allegations contained in the above paragraphs are incorporated herein by reference.

140.    Defendants, in their individual capacities, are liable to Alice for punitive damages as their actions were motivated by malice, willful and wanton negligence, or reckless or callous indifference to Alice's state and federally protected rights.

141.    Defendants knowingly engaged in egregious and outrageous conduct directly causing her harm by refusing to reasonably protect Alice from the harassment, intimidation, and the multiple rapes and sexual assaults by Officer Ingram.

142.    Alice is entitled to recover from all defendants, jointly and severally, punitive damages as permitted by 42 U.S.C. § 1983 and other applicable federal and state laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Alice Roberts respectfully prays the Court as follows:

1.  That she have and recover from all defendants, jointly and severally, individually and in their official capacities, nominal damages, compensatory damages, pain and suffering and other non compensatory damages, and treble damages as provided by law;

2.  That she have and recover from all defendants, jointly and severally, individually and in their official capacities, punitive damages;

3. That the costs of this action, including interest, together with attorneys' fees, pursuant to 42 U.S.C. § 1988 and as otherwise allowed by law, be taxed to defendants;

4. That all issues of fact herein be tried to a jury; and

5. That she be granted such other and further relief as the Court may deem just and proper.

This the 19th day of June, 2018.

Respectfully submitted,

DYSART WILLIS

/s/Meredith Woods Hubbard
Meredith W. Hubbard
507 N. Blount Street
Raleigh, NC 27604
Telephone: (919) 747-8380
Fax: (919) 882-1222
Email: meredith@dysartwillis.com
NC Bar # 38599

G. Ryan Willis
507 N. Blount Street
Raleigh, NC 27604
Telephone: (919) 747-8380
Fax: (919) 882-1222
Email: ryan@dysartwillis.com
NC Bar # 33004

Christian E. Dysart
507 N. Blount Street
Raleigh, NC 27604
Telephone: (919) 747-8380
Fax: (919) 882-1222
Email:christian@dysartwillis.com
NC Bar # 36734

Attorneys for Plaintiff